## YOST v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11155.

Circuit Court of Appeals, Ninth Circuit.

May 3, 1946.

122

Maurice R. McMicken and Alfred J. Schweppe, both of Seattle, Wash., for petitioner.

Sewall Key, Acting Asst. Atty. Gen., and A. F. Prescott, Fred E. Youngman, and Maryhelen Wigle, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, DENMAN, and BONE, Circuit Judges.

DENMAN, Circuit Judge.

This is a review of a decision of the Tax Court holding that compensation paid to a stockholder in the tax years 1940 and 1941 for agreeing in 1938 to the sale of the physical assets of his corporation is taxable as ordinary income and not as a capital gain.

The taxpayer appellant, a resident of the State of Washington, at all relevant times owned and now owns 510 of the shares of stock of Tricoach Corporation, hereinafter called Tricoach. There were 1000 shares of a par value of $50 each. The $50,000 par value of the 1000 shares was paid in and Tricoach was engaged in the manufacture and sale of bus and truck bodies. The remaining minority of 490 shares was owned by Richard B. Newell who managed the manufacture of the bodies and Robert L. Newell who managed their sales. The business prospered and large dividends were paid the three stockholders.

In 1938 the Newells were offered an opportunity to become employed by the Pacific Car and Foundry Co., hereafter called Foundry, in the same manufacture of bodies if they could procure from Tricoach its manufacturing facilities, and if Tricoach would agree not to engage in such manufacturing for seven and a half years.

This proposal required the assent and vote of the 51% of taxpayer's shares in Tricoach. Taxpayer agreed with the Newells that he would so consent and vote in consideration of their promise to pay him certain sums of money over an extended period. In 1938 Tricoach agreed not to compete and in that year the physical properties of Tricoach were sold by it to the Newells on their agreement to pay Tricoach certain sums of money.

In 1940 the Newells paid taxpayer $2,603.65 in part payment of their agreement to compensate him for his vote and consent and in 1941, $12,999.99 as a further such payment. Taxpayer, a married man in a community property state, returned half of each of these sums in the respective years as a capital gain. The Commissioner treats it as ordinary income and as seen his assessment for the deficiency was upheld by the Tax Court.

By June 26, 1940 the Newells had paid Tricoach their consideration for the plant facilities sold to them and the corporation owned $50,000 or more in cash. Thereupon Tricoach entered into an agreement with each of the stockholders by which Tricoach "advanced" to Taxpayer $25,000 and to each of the Newells $12,500. The money so advanced was agreed by each to be returned to the corporation if business activities were resumed. If business activities were not resumed and if the corporation were dissolved, the money advanced was to be applied to settlement of any liquidating dividends which may be declared.

The contract for the money advanced is stated in receipts identical in form except

as to amount, of which that signed by Richard B. Newell reads:

"Receipt

"Seattle, Wash., June 26, 1940

"Received of Tricoach Corporation, the sum of $12,250.00 Twelve Thousand two hundred fifty dollars; same being an amount equivalent to the par value of all the capital stock in said corporation owned by the undersigned. In event the Tricoach Corporation shall resume its business activities the undersigned hereby agrees to return the funds thus advanced; but, if business activities are not resumed, the funds thus advanced shall, upon dissolution, be applied in settlement of any liquidating dividends that may be declared.

"Richard B. Newell"

The corporation has not been dissolved and taxpayer now owns his 51% of the shares of Tricoach which in turn owns the right to demand the performance of the agreement "to return the funds thus advanced", if it resumes business.

In this condition of the record taxpayer contends that he owns stock in a corporation which is a mere hollow shell, and that the transaction of the sale of the plant facilities was a liquidation of the corporate assets by which the stock owned by taxpayer was merged into the promises of the Newells to pay the consideration for his consent and vote for the sale.

This contention is based on a statement of taxpayer that it was a "rather remote" possibility that Tricoach would demand the return of the money advanced to the stockholders. Assuming but not deciding that there could be a remoteness so great that the transaction could be considered a sale or exchange of taxpayer's stock, the evidence shows a lively likelihood that the Newells and taxpayer would resume the business of Tricoach even before the seven and a half years of its agreement not to do so.

The Newells were desired by Foundry because of their skill and experience in manufacture and sale of coach bodies, in which Foundry had a prior unprofitable experience. They did not know whether they would be satisfied in their employment by Foundry and their contract provided they could abandon it at any time. They had transferred their interest in the coach making facilities to Foundry with the provision that if Foundry proposed to sell them, the Newells had an option to repurchase them. If Foundry lost the skill and experience of the Newells Foundry might well have found it expedient to resell the plant facilities to them and retire from the business.

In accord with the likelihood of the taxpayer and the Newells resuming the business of Tricoach is an agreement between the three of them, made on the day the Tricoach agreed to sell the plant facilities to the Newells, that no one of the three would sell or transfer his stock in Tricoach except to members of his family, or, if to be offered to outside parties, that each has an option to purchase it. This does not contemplate the corporation as a hollow shell. In any event the likely continuance of the business seems the rational import of the agreements and the reason why Tricoach has not been dissolved, but retains the right under its contract with its stockholders to demand the return of the $50,000 advanced to them.

There is no merit in taxpayer's contention. Taxpayer's 510 shares still have a substantial value, still are owned by taxpayer and have not been sold or exchanged by him within section 117 of the Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 117. The money received from the Newells by taxpayer in the tax years in question for his agreement to consent and vote for the sale of the facilities and not to continue in business is ordinary income and the tax court properly so held.

The order of the tax court is affirmed.